## McKNIGHT et al. v. NEW ORLEANS COAL & BISSO TOWBOAT CO.

District Court, E. D. Louisiana. October 16, 1929.

No. 18506.

W. J. & H. W. Waguespack, of New Orleans, La., for libelants.

Spencer, Gidiere, Phelps & Dunbar, of New Orleans, La., for respondent.

BORAH, District Judge. Libelants, members of the crew of the tugs Robert W. Wilmot and H. C. Cadmus, have filed a libel in personam against the New Orleans Coal & Bisso Towboat Company, asking that they be decreed certain sums as salvage. The libelants contend that the services rendered by the aforementioned tugs in pulling the steamship Sapinero and the tug Bayport off a mud lump near the mouth of the river were salvage services, and that therefore they, as members of the crew of the tugs, are entitled to share in the amounts which were paid to the New Orleans Coal & Bisso Towboat Company for the services of their tugs.

The New Orleans Coal & Bisso Towboat Company denies that the services furnished by the tugs were salvage services, and avers that the services were rendered under a contract in which respondent was paid a stipulated sum per hour for the work done by said tugs in pulling the vessels off the mud lump and towing them up the river.

The record justifies the following conclusions as to the material facts in this case. The steamship Sapinero and the tug Bayport are the property of the United States Shipping Board. The Bayport was engaged in towing the Sapinero from Mobile to New Orleans, and, in approaching the mouth of the Mississippi river both vessels went aground in about 12 feet of water, on a mud flat off Pass a Loutre Light. In trying to extricate herself from the mud, the tug Bayport broke her rudder. Rather than attempt to rig a jury rudder on the Bayport, the United States Shipping Board decided that it would be cheaper to send down tugs and have the vessels pulled off the mud without delay. Accordingly, a contract was made between the Shipping Board and the New Orleans Coal & Bisso Towboat Company, under which the towboat company agreed to furnish the two tugs heretofore mentioned, and for which they were to be paid on an hourly basis at the rate of $30 per hour for the Robert W. Wilmot and $25 per hour for the H. C. Cadmus. The compensation for the use of the tugs was an unconditional and explicit agreement to pay for the tugs on an hourly basis without regard to the success of their efforts, and it was distinctly agreed that there would be no liability incurred by the vessels for salvage services. In addition to the contract, the evidence shows that the crews of the Bisso tugs were advised before the trip was begun of the nature and character of the undertaking, that the work was being done under contract, and that no claim for salvage was to be made.

At the time this contract was made, neither the Sapinero nor the Bayport were in any danger. They were in soft mud in about 12 feet of water. The evidence further shows that the time consumed in pulling them off the mud was less than a day, and the work was performed in calm weather, without the slightest danger; furthermore, the charge of $30 and $25 per hour, respectively, for the two tugs is the usual and ordinary charge made for the services of the average tug in towing vessels in the Mississippi river.

In The Huntsville, 12 Fed. Cas. 1003, No. 6,916, the court said: "It is next objected to the claim of the second libelants that there was a contract for compensation with them, and that this is not consistent with a claim for salvage. A claim for compensation for salvage may be lost if there has been a contract for compensation, without regard to the success of the efforts which have been used to save the property. But that contract which will bar a claim for salvage must be express, explicit, and in distinct terms."

In the case of The Olockson, 281 F. 690, 694, the Court of Appeals for this circuit held: "That a vessel has been employed for a service for a fixed compensation does not prevent her crew from being awarded salvage

for meritorious services not contemplated by the engagement."

The principle thus enunciated by the court clearly indicates that, where a vessel has been employed for a service at a fixed compensation, and where the only services performed were those contemplated by the engagement, there are no grounds for a claim for salvage by the crew.

That is precisely the situation in the instant case for here the tugs were employed by the hour at a fixed compensation for pulling the vessels off the mud, with the distinct and express understanding that no claim for salvage should be made, and it is perfectly clear that the only services performed were those contemplated by the engagement.

The libel herein will accordingly be dismissed, at libelants' cost.